### Clark *vs.* Fairchild.

On an application to the court to set aside a judgment entered on a report of referees and for leave to move to set aside the report on the merits, where the defendant had omitted to obtain an order to stay proceedings, the court will look into the whole case, and grant or refuse the motion as justice may require.

It is a general rule that a *mistake* in the *stating of an account*, may be corrected; but to this rule there are many exceptions.   In this case, *it was held*, that a *balance* struck by parties in respect to certain matters after a *hearing* before referees had commenced, and which was reported to the referees and entered by them on their minutes, was conclusive as an admission in the cause, and could not be opened.

Where personal property, e. g., a *boat*, was sold under a *special contract*, containing specific provisions as to the mode and time of payment, and as to the vendor furnishing the purchaser with freight, *it was held*, that the property having been delivered to and used by the purchaser, and the plaintiff having performed all that he had stipulated to do, an action might be sustained on a general *indebitatus assumpsit* for the price of the property, and that it was not necessary to declare *specially*.

MOTION in behalf of the defendant, to set aside a judgmen entered on a report of referees; and for leave to move to set aside the report on the merits.

The report was delivered to the plaintiff 28th October, 1839; and was in his favor for $1017.29.   Affidavits to set it aside on the merits were drawn and served on the *second* day of November; and the cause placed on the calendar for argument at the next January term.   Through misappre-

Clark v. Fairchild.

hension of the practice by the defendant's attorney, no order was obtained to stay proceedings, and the plaintiff's attorney perfected judgment, and issued and caused to be levied a *fi. fa.* on the defendant's property.

The defendant's attorney now made a general affidavit that he thought the report erroneous on the merits, and that it ought to be set aside.

The court refusing to interfere on such an affidavit, the defendant's affidavits made with a view to the motion on the merits, were handed up with counter affidavits. By the affidavits it appeared that the claims of the parties lay in mutual accounts. The declaration contained only the common counts in assumpsit. The plaintiff, among other things, claimed $300,60, money due to him from the defendant, which had, as was insisted, been mispaid by the defendant to a certain firm (Clark & Kimball) of which the plaintiff was a member; and also the price of a moiety of a Durham boat, sold by the plaintiff and delivered to the defendant, who had the liberty of paying by carrying freight for the plaintiff. At the time of the sale, the boat was owned in equal moieties by both parties.

Two out of the three referees only met on the day when the cause was noticed for hearing, (September 9th.) But it was agreed that one Eldridge should be examined notwithstanding, and notes of his testimony taken, to be used at any subsequent hearing before the referees instead of requiring his personal examination. His testimony related mainly to the $300,60. After he had been examined, the parties retired and settled all their mutual accounts, amounting to several thousand dollars, except the claim for the moiety of the boat. They found due to the plaintiff $234,46, reckoning the $300,60, as the separate claim of the plaintiff; not as the claim of Clark & Kimball. As a part of the settlement, the plaintiff assigned to the defendant a debt of considerable amount, which he claimed against third persons. It was agreed that the settlement thus made, should be entered in the notes of the two referees present, the sum due to the plaintiff, and so to be allowed; and that the settlement was in full of all

matters between the parties except the claim for the moiety of the boat, to which claim the examination before the referees was to be confined. An entry was made accordingly, and the hearing was adjourned from time to time until the 28th of October, when it was had before all the referees.

On this hearing, after the plaintiff had proved the sale of the moiety of the Durham boat, to be paid for in carrying freight, and had rested ; the defendant offered to prove that the item of $300,60, had been allowed to the plaintiff in the settlement by *mistake*; that the sum had been deposited in a bank to the account of Clark & Kimball, and was drawn out by the plaintiff. This testimony was objected to and overruled.

The sale of the moiety of the boat was not disputed. It took place in February, 1833 ; price agreed, $550. The sale was transacted in writing, between the parties. Provisions as to the mode of payment in freight, and as to furnishing additional freight to the defendant, were made somewhat in detail, relating to the kind of freight, prices and time of transportation, &c. There was no dispute that the defendant had taken actual delivery, and had long held exclusive possession of the share of the boat purchased ; and there was no pretence that it had been paid for. The plaintiff proved the furnishing of freight in the season of 1833, and, as he insisted, enough to satisfy the contract on his part. It was not carried, however ; and no very satisfactory explanation was given why not. The testimony was strong that freight was furnished to the amount of the contract, and directions given as to its transportation ; but the defendant did not show that he had transported any part of it.

The main objection to a recovery was, that the declaration should have contained a *special count*, setting forth the boat and freight contract. The plaintiff answered that, if the referees thought he had fulfilled on his part, the general count on an *indebitatus assumpsit* for goods sold and delivered was enough.

*J. A. Spencer*, for the motion.

*R. Lansing*, contra.

*By the Court,* COWEN, J. It is not denied that the judg-ment is perfectly regular; and all the defendant's counsel pretends to claim is, that he should be relieved on terms, so far that we may hear a motion to set aside the report upon the merits. The mistake of omitting to obtain an order to stay proceedings was of a point in practice very well settled; but still, on a misapprehension so plainly established, we have the power to relieve, and should do so, provided the whole case presented a fair ground for interposing.

Certainly the mistake alone does not furnish an adequate reason; nor does the attorney's general affidavit, that he thinks the report ought to be set aside on the merits, and that he believes we too should think so. Of this we must judge for ourselves. The decision of referees is, like the verdict of a jury, strong evidence against the defendant, and a simple order to stay with a view to move on the merits, upon papers presented in due season, ought not, in such case, to be grant-ed till the judge is convinced, on looking into the matter as made out by proof, that a mistake either of law or evidence will finally be established. For the purpose of obtaining such a view, if not a common, it is at least a salutary prac-tice to grant temporary orders of stay from time to time, till the judges can command a full knowledge of the case as it may be finally settled, or, at least, by looking at the affidavits on both sides. *A fortiori*, where the party purposing to move has been guilty of laches, and comes for an acknowl-edged favour. In such a case he invokes the exercise of a two-fold authority; first, the ordinary power of staying pro-ceedings, common both to a judge at chambers, and the court *in banco;* secondly, the power peculiar to the latter of dis-pensing with the rule of practice by which the party has suffered himself to be foreclosed. In the latter case it ought especially to be seen, that arresting the proceedings and giv-ing the usual chance to be heard in the order of the calendar, will subserve the ends of justice.

With this view I have examined the case before me, as presented by the affidavits on both sides.

*First*, with regard to the settlement and striking a balance. The defendant's counsel relies on the law as unquestionable, that you may always prove a *mistake in accounting*. And I do not deny that this is correct as a general rule. *Phil. Ev.* 384, *8th Lond. ed.* But there are whole classes of exceptions; and the settlement in question plainly belongs to one of them. This settlement was an admission of a balance due, made in the course of hearing a cause, for the purpose of dispensing with all farther proof, after Eldridge, the only witness examined on the subject of the $300,60, had been dismissed. The hearing was afterwards adjourned some two or three times, without an intimation being heard that there was any intention to depart from the point agreed on as the single remaining one, viz. whether the plaintiff should have pay for his half of the boat sold. Nay, more : in the settlement, and as part of it, the plaintiff had made an assignment to the defendant of his claim against third persons. Then at the final hearing, after the plaintiff had closed his proof concerning the boat, and rested, he is met as the first step in the defence with an offer to falsify the item of $300,60.

The settlement was conclusive. In the first place it was conclusive as being an admission in the course of the cause for the purpose of superseding all proof in respect to the general account, and every part of it. Being made with that intent, its conclusive effect is perfectly well established by authority, even though it had been made out of court. *Davies* v. *Burton*, 4 *Carr. & Payne*, 166. *Phil Ev.* 378, *8th London ed.* 1 *Phil. Ev.* 105, *from 7th Lond. ed., and Notes by Cowen & Hill, note* 192, *p.* 200. *A fortiori*, where the admission is in open court. The reason, says Phillipps, ·is, that a court of justice has been induced on the faith of the admission, to adopt a particular course of proceeding. *Phil. Ev. 8th ed. ut supra, et vide, 7th ed. and notes ut supra.* The same books at the same places present and illustrate an additional ground, viz : "Where other persons have on the faith of the representations, been led to alter their

condition." *8th ed. ut supra.* Here the plaintiff had of course been led to avoid all preparation by way of proof on the point settled, but now proposed to be contested. It would have looked much fairer, though I do not admit the offer would then have been admissible, at least to have given the plaintiff previous notice of the new move. Again: the settement was in the nature of a contract in consideration of the plaintiff's assignment; yet it was claimed to throw it open, without even relinquishing this. Against such a step, *Davies* v. *Burton, ut supra,* is in point.

Whether the plaintiff or defendant was in default, with respect to the part which belonged to them respectively in furnishing or carrying freight, was a question of fact on the evidence peculiarly within the province of the referees. It was fairly open to them ; and I am quite clear we can not according to our rules of judging in such matters, disturb their report in this respect. I cannot regard the fact which the defendant now swears to himself, viz: that the plaintiff unwarrantably ordered freight to be taken out of his hands after being committed to him. I can only look at the facts proved before the referees.

But here was no *special count* for not performing the contract. The action was for the price, being $550, on which sum, or so much as they should find due, it was agreed that the referees should cast interest. Whether a special count were necessary depended on several considerations which were well submitted to and passed upon by the referees. If there was still a special contract clearly subsisting and unrescinded, then no doubt the count was strictly necessary. *Robertson* v. *Lynch,* 18 *Johns. R.* 451. But the defendant had been in the exclusive possession of the boat for several years; he had received, soon after taking possesion, a large amount of freight which had not been carried, but had been surrendered to the plaintiff; and the parties had gone through a long course of dealing in apparant disregard of the freight part of the contract. Perhaps the referees thought there was an entire rescission, by mutual consent, of the contract to carry freight. *Vide Raymond* v. *Bearnard,* 12 *Johns. R.* 274. If there were, then

the objection for variance is gone. *Id.* No doubt, had the defendant shown himself clearly ready to answer the call of the plaintiff for carrying freight, at all reasonable times, pursuant to the contract, this would have defeated all claim to recovery in any shape. Indeed it lay with the plaintiff to show as a condition precedent, that he had the freight ready and offered it to be carried. *Wilt* v. *Ogden*, 13 *Johns. R.* 56. The case cited shews that, where the plaintiff is to take pay in the carrying of produce, he must prove that he had the produce ready to carry. But the referees may have found here, as they were warranted in doing on the evidence, that the plaintiff had performed. The plaintiff contended that it was enough to show his side of the contract fully executed as far as was in his power. Where a contract is to pay in money, though at a future day, for goods to be delivered, and they are delivered and the day passes without payment, there is no doubt that general indebitatus assumpsit for goods sold and delivered will lie for the price. 2 *Phil. Ev.* 109. *Am. from 7th Lond. ed.* And I am inclined to think, that the cases will be found to maintain the rule in a much greater latitude, namely, that though the compensation for the goods or other thing which you advance is to be rendered in services or some other specific thing, if the party promising to render is in default, you may sue in indebitatus assumpsit for the price of the thing advanced. If it be goods as in the case at bar, you may consider the goods as simply sold and delivered, and recover under a general count adapted to that case. In saying this, I rather think I am going beyond any direct adjudication in England; though it may be maintained by the principle of many cases there. It is not unjust to hold generally that that goods delivered and converted to the use of the vendee shall be considered as sold, whatever may have been the stipulated form of payment, if that has not been made; and, in such a case a general count for goods sold, has, I observe, been expressly holden proper, by a very respectable court in a neighboring state. *Way* v. *Wakefield*, 7 *Verm. R.* 223, 228. Collamer, J. admits there had been much controversy on the point, but finally advances

this rule : " Whenever there are goods sold, work done or money passed, whatever stipulations may have been made about the price, or *mode* or time of payment, if the terms have transpired so that money has become due, the general count may be sustained." The action was for harness sold, to be paid for in lumber at a specified time. There being a default in payment, the court allowed the general count for harness sold. The learned judge certainly did not cite any direct authority for thus applying the rule : but I find he stands supported by an approved author who has devoted much time to studying the action of assumpsit, and written a very full treatise upon it. In *Lawes on Pleading*, 5, it is added, " nor is this rule confined to cases where money is promised to be paid, and a debt created, for where the promise is to do any collateral act, as to deliver up a bond or the like on payment of a sum of money, when the money is paid or tendered and refused, (when it may be considered as paid,) a *new promise* to deliver up the bond arises by *operation* or *construction* of law ; and therefore, the plaintiff in such case may either declare on the original express promise, or upon the promise arising by operation of law, viz. *out of the execution of the contract*. Hence it seems a *general rule*, that, so long as a contract is *executory*, the party must declare specially ; but when it is *executed*, he may declare generally." Why not in the case at bar imply a contract to pay the price agreed on for the moiety of the boat, as goods sold, provided the referees were satisfied that the defendant had been in default by refusing or neglecting to carry the freight ? Would it be unjust to raise such a promise out of *the execution of the contract by the plaintiff*, in the language of Mr. *Lawes ?* But I admit there are several dicta which take a more restricted view. 6 *Dana.* 397. 10 *Yerg.* 455, 6. *Platt, J.* in *Champlin* v. *Butler*, 18 *Johns. R.* 169, 173, 4. And the English books are still cautious of carrying the rule beyond a stipulation to pay in money. 1 *Leigh's N. P.* 43, 44, 88. I dont know but there may be direct decisions thus confining it, though I think it will be found that the course of the courts is favorable to general pleading, as tending to avoid

prolixity and technical difficulties. One of our late cases holds that property being delivered and received to satisfy another's debt, may be sued for as for money paid. *Ainslie* v. *Wilson*, 7 *Cowen*, 662. And in all cases where parties have agreed to consider labor or property, in their dealings, as equivalent to cash, why not call it so in the pleadings? The truth is, there are several English cases which go this length. *Hands* v. *Burton*, 9 *East*, 349, is one. There the averment that the defendant agreed to sell his horse to the plaintiff for £31, 10, who *paid that sum*, was held to be sustained by proof that he paid in cash all but £14, 14; and for that the defendant agreed he would purchase a horse of the plaintiff's brother at 14 guineas. Lord Ellenborough said the parties agreed to consider the brother's horse as 14 guineas in their mode of reckoning the payment for the defendant's horse; but still the consideration of the latter was 30 guineas, and the defendant received 30 guineas in money *or value*. Le Blanc, J. enlarges on the same ground. Thus, what is considered by *parties* as equivalent to cash, in other words as a mode of payment, is cash; and may be so called in pleading. So in *Brown* v. *Fry*, *Selw. N. P. by Wheat.* 658, *Am. ed.* 1839, the plaintiff averred he had bought of the defendant a horse for so much money. Proof that the plaintiff had given a mare and money, which the defendant had receipted for so much, held no variance. Graham, Baron, said the defendant had taken the mare as money. *Vid.* 2 *Leigh's N. P.* 1509, *Am. ed.* 1838. Again: wherein do the cases differ which say a payment in bank notes is a payment in money? 1 *Selw. N. P. ut sup.* p. 104. They are put on the same ground, viz. being received as money. Whatever is agreed on as a medium of payment is money in substance and effect; and what rule of evidence is better settled than that the substance of the issue only need be proved? It is the same thing where goods are sold and delivered, to be paid for in labour or goods, at another day. The latter are agreed on to answer as cash; and if not paid, why not declare in the general form as on an executed special contract answerable in money? I venture to say that *Way*

v. *Wakefield*, is at this day law at Westminster Hall ; and it will be adopted, if English judges ever come to consider it in the same spirit as they considered other American decisions lately in *Beverly* v. *Lincoln*, 6 *Adol. & Ellis*, 829.

But the capital objection to allowing, at this stage of the case, an argument on the question between a general and special count is, that the point is merely *technical*, and does not touch the merits of the controversy. There might have been plausible ground for an order at chambers ; but the defendant waived that, and now comes for a favor. He calls for the exercise of our discretion ; and certainly we ought not to strain a point to let in an objection which does not in its nature deny that the debt is due, but only complains that the plaintiff is proceeding to get his honest due under a *general* instead of a *special count*. Should we set aside the report on that ground, it could only be done as to the boat; and then we should, beyond all doubt, allow an amendment, by adding a special count. Indeed, did I feel at all bound on other grounds to stay the plaintiff's proceedings, I think I should do so only on condition that the defendant stipulate to allow the special contract in evidence under the present declaration. I am aware, while saying so, of what the defendant now says in his affidavit on this head, viz : that he expected the objection for the variance would succeed, that he was so advised by his counsel, and therefore was not so well prepared with proof to show that the plaintiff refused or neglected to furnish the freight. I have only to say, in reply, that having started on such technical ground, he was bound at his peril to keep up an unbroken line of strict practice.

On the whole, I am entirely satisfied, that granting the relief sought by this motion, can in no way promote the purposes of justice. Therefore it is denied, with costs.